**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **TERINA CLARK & BRYAN CLARK,** **individually and as Private Attorney Generals** **on behalf of the general public,** | **1:18-cv-01661-LJO-JLT** |
| | **MEMORANDUM DECISION AND** **ORDER DENYING MOTION TO** **REMAND AND STAYING MOTION TO** |
| **Plaintiffs,** | **DISMISS** |
| **v.** | **(ECF Nos. 4, 10)** |
| **WORLDMARK, THE CLUB, et al.,** | |
| **Defendants.** | |

## I. <u>PRELIMINARY STATEMENT TO PARTIES AND COUNSEL</u>

Judges in the Eastern District of California carry the heaviest caseloads in the nation, and this Court is unable to devote inordinate time and resources to individual cases and matters. Given the shortage of district judges and staff, this Court addresses only the arguments, evidence, and matters necessary to reach the decision in this order. The parties and counsel are encouraged to contact the offices of United States Senators Feinstein and Harris to address this Court's inability to accommodate the parties and this action. The parties are required to reconsider consent to conduct all further proceedings before a Magistrate Judge, whose schedules are far more realistic and accommodating to parties than that of U.S. Chief District Judge Lawrence J. O'Neill, who must prioritize criminal and older civil cases.

Civil trials set before Chief Judge O'Neill trail until he becomes available and are subject to suspension mid-trial to accommodate criminal matters. Civil trials are no longer reset to a later date if Chief Judge O'Neill is unavailable on the original date set for trial. Moreover, this Court's Fresno

1    Division randomly and without advance notice reassigns civil actions to U.S. District Judges throughout

2    the Nation to serve as visiting judges. In the absence of Magistrate Judge consent, this action is subject

3    to reassignment to a U.S. District Judge from inside or outside the Eastern District of California.

## II. <u>INTRODUCTION</u>

5         This case involves a putative class action initially filed by Plaintiffs Terina and Bryan Clark

6    ("Plaintiffs") on May 10, 2018, in the Superior Court of the State of California in the County of Kern.

7    *See* ECF No. 1 ¶ 3. Defendants WorldMark, The Club ("WorldMark"), Wyndham Resort Development

8    Corporation ("WRDC"), and Wyndham Vacation Ownership, Inc. ("WVO") (collectively "Defendants")

9    were served with the Complaint on November 6, 2018, and removed the case to this Court on December

10   6, 2018, asserting jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"). *Id*. ¶¶ 1, 4. On

11   December 12, 2018, Defendants filed a motion to dismiss. ECF No. 4. Plaintiffs filed an opposition on

12   December 31, 2018, ECF No. 6, and a motion to remand to state court on January 1, 2019, ECF No. 7.

13   Defendants filed a reply regarding the motion to dismiss on January 7, 2019. ECF No. 8. The Court

14   determined the motion to dismiss suitable for decision on the papers under Local Rule 230(g) and took

15   the matter under submission on January 7, 2019. ECF No. 9. Plaintiffs filed an amended motion to

16   remand on January 15, 2019. ECF No. 10. Defendants filed an opposition to the motion to remand on

17   January 18, 2019, ECF No. 11, and Plaintiffs filed a reply on January 28, ECF No. 13. The Court

18   determined the motion to remand suitable for decision on the papers under Local Rule 230(g) and took

19   the matter under submission on January 29, 2019. ECF No. 14.

## III. <u>BACKGROUND</u>

21        The following facts are drawn from the Complaint and from Defendants' Notice of Removal.

22   Plaintiffs are residents of Bakersfield, California, and citizens of California. ECF No. 1-1 ¶ 7. Defendant

23   WRDC is incorporated in Oregon and has its principal place of business in Florida. ECF No. 1 ¶ 12.

24   Defendant WVO is incorporated in Delaware and has its principal place of business in Florida. *Id*. ¶ 13.

25   Defendant WorldMark is incorporated in California and has its principal place of business in

1    Washington. *Id.* ¶ 14. The Class in this matter consists of all individuals "who have 1) been sold a

2    timeshare in California by Defendants through individuals or entities not licensed to sell real estate or

3    arrange financing for real estate purchases in California and 2) have been told by Defendants that they

4    have earned 'equity' on the purchase of timeshare points." ECF No. 1-1 ¶ 28.

5            Plaintiffs allege that they purchased a timeshare interest sold by Defendants WorldMark and

6    WRDC in 2015 while on vacation in San Diego, and purchased additional points in September 2016. *Id.*

7    ¶ 13. On or around April 29, 2017, Plaintiffs received a call from an office operated by Defendants. *Id.* ¶

8    14. The individual who spoke with Plaintiffs made "many materially false and misleading statements"

9    and induced Plaintiffs to purchase an additional 1,000 WorldMark vacation credit points for $3,450 plus

10   a $349 processing fee. *Id*. The purchase was financed by an extension of credit by WRDC, bringing the

11   total amount owed by Plaintiffs for their timeshare interest to more than $26,000. *Id*. The contract

12   Plaintiffs signed for the purchase appeared to be intended for California purchasers. *Id*. ¶ 18. The name

13   of the person who signed the contract on Defendants' behalf does not appear on any list of current or

14   recent holders of California real estate broker or salesperson licensees. *Id*. ¶ 19.

15           Defendants have represented since the time of Plaintiffs' initial timeshare purchase that Plaintiffs

16   have equity in their timeshare interest. *Id*. ¶ 21. On September 8, 2016, Defendants represented that

17   Plaintiffs had $10,089.03 in equity in their timeshare purchases. *Id*. Plaintiffs believe the actual market

18   value of the timeshare points they owned in September 2016 was zero or near zero, and Plaintiffs

19   therefore actually had negative equity. *Id*. ¶ 23.

20           Plaintiffs allege that Defendants engaged in unfair business practices when they unlawfully sold

21   a real estate interest through unlicensed individuals, who earned commissions on the sales, in California

22   in violation of California law. *Id*. ¶¶ 30-33 (citing Cal Bus. & Prof. Code § 17200 *et seq.*). Additionally,

23   Plaintiffs allege that Defendants engaged in unfair business practices by making materially false

24   representations in connection with the sale of a timeshare interest as to the equity value of the timeshare

25   points Plaintiffs owned. ECF No. 1-1 ¶¶ 34-38. Finally, Plaintiffs allege that Defendants violated the

1    California Vacation Ownership and Time-Share Act of 2004, Cal. Bus. & Prof. Code § 11210 *et seq.*, by

2    making materially false and misleading representations about the equity value of Plaintiffs' time share

3    points. ECF No. 1-1 ¶¶ 39-43.

4                                              **IV. LEGAL STANDARD**

5            "[A]ny civil action brought in a State court of which the district courts of the United States have

6    original jurisdiction, may be removed by the defendant or the defendants, to the district court of the

7    United States for the district and division embracing the place where such action is pending." 28 U.S.C.

8    § 1441(a). "To remove a case from state court to federal court, a defendant must file in the federal forum

9    a notice of removal 'containing a short and plain statement of the grounds for removal.'" *Dart Cherokee*

10   *Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 551 (2014) (quoting 28 U.S.C. § 1446(a)).

11   However, "[i]f at any time before final judgment it appears that the district court lacks subject matter

12   jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

13           CAFA vests federal courts with "jurisdiction over certain class actions, defined in § 1332(d)(1),

14   if the class has more than 100 members, the parties are minimally diverse, and the amount in

15   controversy exceeds $5 million." *Dart*, 135 S. Ct. at 551 (quoting 28 U.S.C. § 1332(d)(2), (5)(B)).

16   CAFA was intended by Congress to "expand substantially federal court jurisdiction over class actions."

17   S. Rep. No. 109-14, at *43 (2005). Under CAFA, there is no presumption against removal. *Dart*, 135 S.

18   Ct. at 554. However, a defendant cannot establish removal jurisdiction by mere speculation, or prove the

19   requirement based on unreasonable assumptions. *Ibarra v. Manheim Invs, Inc.,* 775 F.3d 1193, 1197

20   (9th Cir. 2015). "Where facts are in dispute, the statute requires district courts to make factual findings

21   before granting a motion to remand a matter to state court." *Mondragon v. Capital One Auto Fin.,* 736

22   F.3d 880, 883 (9th Cir. 2013). While federal courts normally have jurisdiction over cases where the

23   amount in controversy exceeds $5 million and minimal diversity exists under 28 U.S.C. § 1332(d)(2), in

24   some situations a district court *may* decline to exercise jurisdiction. *See* 28 U.S.C. § 1332(d)(3). In two

25   circumstances, the court *must* decline jurisdiction. 28 U.S.C. § 1332(d)(4); *Serrano v. 180 Connect, Inc.,*

                                                           4

1    478 F.3d. 1018, 1022 (9th Cir. 2007). A district court must decline to exercise jurisdiction:

2                      (i) over a class action in which—
                              (I) greater than two-thirds of the members of all proposed
3                             plaintiff classes in the aggregate are citizens of the State in
                              which the action was originally filed;
4                             (II) at least 1 defendant is a defendant--
                                      (aa) from whom significant relief is sought by
5                                     members of the plaintiff class;
                                      (bb) whose alleged conduct forms a significant
6                                     basis for the claims asserted by the proposed
                                      plaintiff class; and
7                                     (cc) who is a citizen of the State in which the action
                                      was originally filed; and
8                             (III) principal injuries resulting from the alleged conduct or
                              any related conduct of each defendant were incurred in the
9                             State in which the action was originally filed; and
                      (ii) during the 3-year period preceding the filing of that class
10   action, no other class action has been filed asserting the same or similar
     factual allegations against any of the defendants on behalf of the same or
11   other persons; or

12   28 U.S.C. § 1332(d)(4)(A). This exception to federal CAFA jurisdiction is known as the "local

13   controversy" exception. In determining whether the criteria for the local controversy exception have

14   been met, a court may look only to the complaint. *Coleman v. Estes Express Lines, Inc.*, 631 F.3d 1010,

15   1015 (9th Cir. 2011). On a plaintiff's motion to remand, it is a defendant's burden to establish

16   jurisdiction by a preponderance of the evidence. *Dart*, 135 S. Ct. at 553-54; *Rodriguez v. AT & T*

17   *Mobility Servs., LLC*, 728 F.3d 975, 978 (9th Cir. 2013).

18                                   **V. <u>ANALYSIS</u>**

19   **A.      <u>Local Controversy Exception</u>**

20          Plaintiffs assert that the local controversy exception applies here, and that the Court must

21   therefore decline to exercise jurisdiction under CAFA and remand the case to state court. ECF No. 10 at

22   6. As the putative class is limited to residents of California, Plaintiffs argue the requirement that two-

23   thirds of class members be in-state citizens has been met. *Id*. at 7. Plaintiffs also assert that no party

24   contests Defendant WorldMark's California citizenship. *Id*. at 8. Finally, Plaintiffs contend that they

25   seek significant relief from Defendant WorldMark, and that Defendant WorldMark's conduct forms a

1    significant basis of Plaintiffs' claims. *Id*. at 9.

2         Defendants do not appear to dispute that greater than two-thirds of the proposed class are citizens

3    of California, that Defendant WorldMark is a California citizen, or that no class action has been filed in

4    the prior three years against Defendants and alleging the same or similar claims. Instead, Defendants'

5    objections to remand pertain to whether Defendant WorldMark's conduct is a significant basis for

6    Plaintiffs' claims, and whether significant relief is sought from Defendant WorldMark. ECF No. 11 at 9.

7    Since Defendant WorldMark is not a significant defendant, Defendants argue, the local controversy

8    exception does not apply, and this case should remain in federal court. *Id*. at 15

9         Subject matter jurisdiction determinations under CAFA are intended to be made quickly and on

10   the allegations in the complaint rather than extrinsic evidence. *Coleman*, 631 F.3d at 1016-17. As a

11   preliminary matter, Plaintiff has made a sufficient showing that two-thirds or more of the proposed class

12   members are citizens of California, that no similar class action has been filed against Defendants and by

13   Plaintiffs in the past three years, and that Defendant WorldMark is a California citizen. Therefore, the

14   Court finds that those requirements for application of the local controversy exception have been

15   satisfied. The remaining questions are whether Defendant WorldMark's conduct forms a significant

16   basis for the claims alleged here, and whether significant relief is sought from Defendant Worldmark.

17        The type of conduct and relief which would qualify as "significant" is not defined in the statute.

18   *See Woods v. Standard Ins. Co.*, 771 F.3d 1257, 1265 (10th Cir. 2014). Courts applying the statutory

19   language therefore have looked to the legislative history of CAFA to illuminate the meaning of the term

20   "significant" as used in the local controversy exception. *See, e.g.*, *Broadway Grill, Inc. v. Vista, Inc.*,

21   856 F.3d 1274, 1278 (9th Cir. 2017) (describing CAFA's legislative history as "often cited").

22        The local controversy exception is specifically discussed in the Senate Judiciary Committee's

23   report on CAFA. [1] In order for the local controversy exception to apply, the complaint must name "at

24   _____

25   [1] Judge O'Scannlain and others have questioned the merits of considering Senate Report 109-14 when interpreting CAFA, as

1    least one real defendant (whose alleged conduct is central to the class's claims and from whom the class

2    seeks significant relief)" and who is local. Sen. Rep. 109-14, at *29. The exception is "narrow . . . [and]

3    was carefully drafted to ensure that it does not become a jurisdictional loophole." *Id.* at *39. Courts

4    applying the exception "should bear in mind that the purpose of each of [the] criteria is to identify a

5    truly local controversy–a controversy that uniquely affects a particular locality to the exclusion of all

6    others." *Id.* "The defendant must be a target from whom significant relief is sought by the class (as

7    opposed to just a subset of the class membership)." *Id.* at *40. The Committee offered, as a hypothetical

8    defendant who would not satisfy the local controversy exception, the local agent of an insurance

9    company that is incorporated and based in another state. *Id.* "[T]he real demand of the full class in terms

10   of seeking significant relief would be on the insurance company itself. Similarly, the agent presumably

11   would not be a person whose alleged conduct forms a significant basis for the claims asserted." *Id.*

12          The Senate Committee also provided two examples of how it intended the exception to operate.

13   The first posits an action against a funeral home alleging wrongful burial practices, with the funeral

14   home incorporated in the state in which the burials were performed but supervised by an out of state

15   parent company. *Id.* at *41. This is the type of situation in which the local controversy exception was

16   intended to operate. *Id*. The second example involved a case brought by Floridians against Florida

17   automobile dealers and out of state manufacturers concerning products defects in cars sold nationwide.

18   *Id*. The exception would not apply because, even though some relief might be sought from in-state

19   dealers, the primary party responsible for the defects and for the bulk of the relief would be the

20   manufacturer. *Id.* Additionally, the injuries occurred nation-wide, and the mere fact that the class

21   included only Floridians was not enough to satisfy the local controversy requirement. *Id.*

22          The Ninth Circuit applies a "comparative" approach to determine whether the conduct of an in-

23   _____

24   "it 'was not submitted until eighteen days after the Senate had passed the bill, eleven days after the House had passed the bill,
     and ten days after the President signed the bill into law.'" *Coleman*, 631 F.3d at 1021 (O'Scannlain, concurring) (quoting
25   *Amalgamated Transit Union Local 1309 v. Laidlaw Transit Servs., Inc.*, 448 F.3d 1092, 1096 (9th Cir. 2006) (Bybee, J.,
     dissenting from denial of rehearing *en banc*)).

1    state defendant forms a significant basis for the claims alleged. *Allen v. Boeing Co.*, 821 F.3d 1111,

2    1121 (9th Cir. 2016) (citing *Benko v. Quality Loan Serv. Corp.*, 789 F.3d 1111, 1118 (9th Cir. 2015)).

3    Under this approach, the conduct of the in-state defendant is compared to the "conduct of all

4    defendants." *Benko*, 789 F.3d at 1118. A significant basis has been found where an in-state defendant

5    was one of six defendants and responsible for 15% to 20% of the total claims in the case. *Benko*, 789

6    F.3d at 1118-19; *see also Christmas v. Union Pac. R.R. Co.*, 698 F. App'x 887, 889 (9th Cir. 2017)

7    (allegations that each of four local defendants was responsible for 20% of the total liability was evidence

8    of a significant basis).

9         There are no facts alleged in the Complaint on which the Court can conclude that Defendant

10   WorldMark is a significant as opposed to a minor or nominal participant in the alleged scheme. The

11   Complaint alleges that Defendant WorldMark "owns, manages or operates timeshare resort and hotel

12   facilities, including in multiple locations in California." ECF No. 1-1 ¶ 8. It also alleges that Plaintiffs

13   purchased a timeshare interest sold by Defendant WorldMark in 2015, some number of additional

14   timeshare points in 206, and "1,000 additional Worldmark vacation credit points" in 2017. *Id.* ¶¶ 13-14.

15   The Complaint does not specify whether the timeshare points purchased by Plaintiffs were for use at

16   resorts managed by Defendant WorldMark, or for facilities managed by Defendant WRDC. It is

17   plausible, based on the Complaint, that when Plaintiffs purchased additional points, they did so directly

18   from Defendant WorldMark, while Defendant WRDC provided financing. It is equally plausible that

19   Defendant WRDC both sold and financed the points, with Defendant WorldMark acting as a holding

20   company. The Court simply cannot tell from the Complaint as written. Plaintiffs argue that "all Plaintiffs

21   allege that they have purchased a timeshare interest from [WorldMark]," ECF No. 10 at 9, but the

22   Complaint alleges that Plaintiffs purchased their interests from Defendants collectively. Even drawing

23   the inference that "Worldmark vacation credit points" are intended for use at properties owned,

24   operated, or managed by Defendant WorldMark, as opposed to those (if any) operated solely by

25   Defendants WRDC or WVO, it is not clear that Defendant WorldMark's conduct is a significant basis

1  for the specific claims alleged here. *Id*. ¶ 9.

2      The claims Plaintiffs assert are that Defendants violated California law when they sold timeshare

3  interests through unlicensed real estate brokers, who earned commissions on the sales, and when they

4  made false or materially misleading statements about the equity value of Plaintiffs' timeshare points.

5  The Court cannot determine which Defendants were responsible for, or connected to, the actions

6  forming the basis for the specific claims asserted here. An individual signed a sales contract "on behalf

7  of Defendants" and was paid a commission on that sale. ECF No. 1-1 ¶¶ 19, 20. Was Defendant

8  WorldMark a party to that contract, or only the out of state Defendants? Did WorldMark, WRDC, or

9  WVO employ the unlicensed broker? Which Defendants signed or authored written representations to

10 Plaintiffs regarding the equity value of their timeshare points? The Court simply is not able to determine

11 which Defendant is alleged to be responsible for what conduct without engaging in speculation.

12     The fact that the Complaint alleges Defendants WRDC, WVO, and WorldMark collectively

13 engaged in engaged in unlawful activity does not mean that Defendant WorldMark is not a significant

14 defendant. *See Coleman*, 631 F.3d at 1020 (allegations that an out-of-state defendant violated the same

15 provisions of California law as the in-state defendant do not make the allegations against the in-state

16 defendant "insignificant"). However, Plaintiffs' allegations do not indicate that Defendant WorldMark

17 was a participant in the timeshare scheme rather than a mere agent of Defendants WRDC or WVO. *See*

18 *Busker v. Wabtec Corp.*, ___F. App'x ___, 2018 WL 4233068, at *1 (9th Cir. 2018) (where a local

19 defendant's "sole alleged conduct was undertaken as an agent of [an out of state defendant]," the

20 plaintiff had not established a significant basis); Sen Rep. 109-4, at *40. Without more detail, the Court

21 is unable to determine whether the in-state Defendant's conduct is a significant basis for the claims in

22 this case.

23     A similar lack of specificity clouds the Court's attempt to discern whether the Complaint seeks

24 "significant relief" from Defendant WorldMark. "To determine if the Plaintiffs claim 'significant relief'

25 from a local defendant, courts "look to the remedies requested by the Plaintiffs." *Benko*, 789 F.3d at

9

1119. Plaintiffs remedies including damages, injunctions, disgorgement, and cancellation of timeshare

contracts and refunds relating to timeshare interests sold by unlicensed agents or after false or

misleading statements regarding the equity of timeshare points. ECF No. 1-1 at 14. It is not possible to

discern from the face of the complaint which Defendant (WorldMark, WRDC, or WVO) is a signatory

to timeshare contracts which Plaintiffs seek to cancel, or whether Defendant WorldMark received any

allegedly wrongfully obtained monies subject to disgorgement. Nor is it possible to determine, even

provisionally, how damages might be apportioned.

The Complaint fails to establish with sufficient specificity that Defendant WorldMark's actions

constitute a significant basis for the claims asserted in this action, or to set forth allegations seeking

significant relief from Defendant WorldMark. Therefore, Plaintiffs have not met their burden of proving

that the local controversy exception to CAFA applies. The motion to remand is therefore DENIED.

**B.**   **Leave to Amend**

Plaintiffs request leave to amend the Complaint if the Court does not find that the requirements

for remand are met. ECF No. 13 at 5. As a general rule, a plaintiff cannot compel remand by amending a

complaint to eliminate claims or add parties in order to defeat federal jurisdiction. *Sparta Surgical Corp.*

*v. Nat'l Ass'n of Sec. Dealers, Inc.*, 159 F.3d 1209, 1213 (9th Cir. 1998). This general rule extends to

cases removed to federal courts under CAFA, and federal jurisdiction is determined at the time of

removal. *Mondragon*, 736 F.3d at 883; *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied*

*Indus. & Serv. Workers Intern. Union, AFL-CIO, CLC v. Shell Oil Co.*, 602 F.3d 1087, 1091-92 (9th Cir.

2010). In limited circumstances, however, the Ninth Circuit recognizes an exception to this general rule.

The exception was first applied in *Benko v. Quality Loan Service Corp*. 789 F.3d 1111. In *Benko*, the

Ninth Circuit held that it was abuse of discretion for a district court to deny a plaintiff leave to amend a

complaint removed to federal court when the amendments sought "to clarify issues pertaining to federal

jurisdiction under CAFA." 789 F.3d at 1117. This holding was based, in part, on consideration of the

possibility that a complaint originally drafted for filing in state court "may not address CAFA-specific

1   issues, such as the local controversy exception." *Id*.

2   In *Broadway Grill v. Visa, Inc.*, the Ninth Circuit clarified the type of amendments permitted

3   following CAFA removal. 856 F.3d 1274. In that case, the plaintiffs had sought to amend their

4   complaint to change the class composition, eliminate minimal diversity, and defeat federal jurisdiction

5   under CAFA. *Id*. at 1276. Observing that *Benko* had generated uncertainty "as to when post-removal

6   amendments may be allowed," *id*., the Ninth Circuit explained that amendment in *Benko* was permitted

7   to "explain[] the impact of the complaint's allegations on one of the defendants" and "provide some

8   amplification . . . of the nature of plaintiffs' allegations." *Id*. at 1277. CAFA, a statute favoring federal

9   jurisdiction, was drafted with the understanding that "if minimal diversity exists at the time of removal,

10  jurisdiction could not be divested, even if the situation changed as a result of a later event." *Id*. at 1278-

11  79. Amendment is therefore appropriate only "for purposes of clarifying the relationship between the

12  parties and the effect of the class claims on particular defendants" and not "to permit plaintiffs to amend

13  their class definition, add or remove defendants, or add or remove claims in such a way that would alter

14  the essential jurisdictional analysis." *Id*. at 1279.

15  The non-specific allegations in this case fall squarely within the very limited exception to the

16  prohibition on post-removal amendment outlined in *Benko* and clarified in *Broadway Grill*. The

17  allegations are suggestive, but fall short of establishing that Defendant WorldMark is a significant local

18  defendant. Therefore, Plaintiffs will be granted leave to amend the Complaint. As *Broadway Grill*

19  makes abundantly clear, in amending the Complaint Plaintiffs may not alter the class composition or

20  name additional Defendants in order to defeat federal jurisdiction. They may only amplify the nature of

21  the allegations in their Complaint to explain the impact on Defendant WorldMark.

22  ## VI. CONCLUSION AND ORDER

23  For the foregoing reasons, Plaintiffs' motion to remand is DENIED with leave to amend the

24  complaint. Plaintiffs may file any amended complaint clarifying the allegations regarding in-state

25  Defendants' conduct within 30 days. While the local controversy exception is non-jurisdictional, where

11

1  it applies remand is non-discretionary. *Visendi v. Bank of Am., N.A.*, 733 F.3d 863, 869 (9th Cir. 2013).

2  Therefore, in the interests of justice and judicial efficiency, the Court will defer ruling on the motion to

3  dismiss until it determines whether the exercise of jurisdiction is proper. Defendants' motion to dismiss

4  is therefore STAYED. If Plaintiffs elect not to amend the complaint, the Court will proceed to rule on

5  the motion to dismiss.

6

7  IT IS SO ORDERED.

8  Dated:   **March 1, 2019**                           **/s/ Lawrence J. O'Neill**
                                                         UNITED STATES CHIEF DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25